# THE STATE v. DUNN, Appellant.

## Division Two, October 27, 1902.

**Murder:** VERDICT: RESULT OF PASSION OR PREJUDICE. The difficulty arose over a claim that deceased owed defendant money. A number of workmen were waiting at a station in the afternoon to take their train to the place of their night work. Defendant came into the stationhouse, apparently looking for someone, then went back up the track down which he had come, soon afterwards returned and looked through the stationhouse again, and repeated this performance the third time, and on his way up the track again he met deceased, walking toward the station with a dinner bucket in his hand. They talked briefly, and the State's witnesses testified that defendant drew a pistol and began to fire at deceased and after two shots were fired deceased sank as if he would fall and thereupon defendant seized hold of him and held him up and fired another shot and then threw the cartridges out of his pistol and ran down the track and disappeared. Later he surrendered himself. His testimony tended to show that when he asked deceased for money deceased grew angry and cut at him with a knife three times or more and that then he drew the pistol and shot him. The State's testimony showed that defendant went to deceased's house the day prior to the homicide and was looking for deceased who was not at home. This defendant denied, and his testimony tended to show that deceased came to his house the forenoon preceding the homicide and assaulted him with a knife. *Held,* that there was nothing in this evidence to indicate that the verdict of murder in the first degree was excessive or unjust or the result of passion or prejudice.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,* Judge.

AFFIRMED.

*Jas. H. Staubus* for appellant.

*Edward C. Crow,* Attorney-General, for the State.

(1)· ·Testimony showing that after the shooting the defendant delivered himself up, and what he then said, would be self-serving acts or declarations, and not admissible.    State v. Musick, 101 Mo. 274; State v. Smith, 114 Mo. 424; State v. Taylor, 134 Mo. 154; State v. Strong, 153 Mo. 556.    (2)    The rule is that the Supreme Court will not reverse the judgment of any court unless it shall believe that error was committed by such court against the appellant, materially affecting the merits of the action, and it has been uniformly held in construing this provision that it must appear that the error had or might have had a probable effect on the jury.    State v. Kring, 74 Mo. 612; Hogan v. Railroad, 150 Mo. 51.    (3)    The evidence in this case is ample and sufficient to warrant and support the verdict found by the jury.    No passion or prejudice existed on the part of the triers of the fact, nor is any such suggested by the record or the bill of exceptions.    Such being the case, this court will not undertake to encroach upon the province of the jury and weigh the testimony and determine the questions of fact suggested in evidence. The judgment can not be disturbed on that ground. State v. Banks, 118 Mo. 117; State v. Green, 117 Mo. 298; State v. Petit, 119 Mo. 410; State v. Lowe, 93 Mo. 547; State v. Schaefer, 116 Mo. 96; State v. Thomas, 78 Mo. 327.

BURGESS, J.—Defendant was convicted in the circuit court of the city of St. Louis for murder in the first degree and his punishment fixed at death for having theretofore on October 29, 1890, at said city, shot and killed with a pistol, one Peter Jackson.

After unsuccessful motion for a new trial he appeals.

The facts disclosed that Jackson and defendant had had some trouble prior to the homicide concerning money claimed to have been owed by Jackson to defendant. The difficulty occurred at Eighth and Gratiot streets on the afternoon of October 29, 1900, about half past four or five o'clock and just prior to the time for the departure of the train carrying the workmen who worked at night in a manufacturing establishment on the east side of the Mississippi river. The testimony of several witnesses was to the effect that they were engaged in the employ of a manufacturing establishment in Illinois, and that, in pursuance to their custom, they went down to the railway station at Eighth and Gratiot streets to take the workmen's train across the river to work for the night; that while waiting for the train the defendant came up the track from the west, which said track ran in front of the station door, and that he looked into the station, apparently hunting for some one, and then went back down the track in the direction from which he came, but returned shortly after and went through the same performance and departed in the same direction, returned once more and again went west down the railroad track and this time a short distance from the station he met the deceased going up the track toward the station with a dinner bucket in his hand. The evidence shows that the men talked briefly and the testimony for the State was to the effect that defendant drew a pistol and begun firing at deceased and after shooting two shots deceased sank as though he would fall and defendant grabbed him and held him up and fired another shot and then threw the cartridges out of his pistol and ran west down the track and disappeared.

The defendant's evidence tended to show that deceased and defendant met at the point indicated by the State's testimony west of the railway station and that an altercation ensued; that defendant asked deceased for money, which he claimed the deceased owed him and

that deceased grew angry and cut at him with a knife three times or more and that defendant then drew the pistol and shot him.   The testimony of the State showed that the defendant went to the house where deceased boarded, Sunday morning prior to the Monday afternoon of the homicide, and was looking for deceased, but that he was not at home.   The defendant denied this and on the part of the defense the testimony tended to show that the deceased came to the house of the defendant at least once Monday, the day of the killing, and assaulted the defendant with a knife.   The defendant admitted that he did not usually carry a weapon, but that he armed himself that afternoon and went to the depot at Eighth and Gratiot street, as he claimed, to go to work.   The defendant shortly after the shooting surrendered himself to a police officer.   The deceased after the shooting was moved in an ambulance to the hospital and died the next afternoon.

The defendant is not represented in this court, but was in the court below, and in that, after verdict, his attorney filed a motion to set the same aside and for a new trial, which was overruled.   We have looked carefully through the record proper which we find free from error, and will now turn our attention to such points raised by the motion for a new trial as may appear to us to be worthy of our consideration, the first two of which may be considered together.   They are with respect to the action of the court in admitting, on the part of the State, incompetent and immaterial evidence against the defendant, and in excluding competent and material testimony offered on the part of defendant.

It is not intimated in the motion or elsewhere what particular ruling or rulings are complained of, or upon what page or pages of the record such ruling or rulings may be found, nor have we been able to discover any such ruling, after a painstaking and careful reading of the record.   We must therefore rule these points against the defendant.

It is asserted in the motion for new trial that the

court failed to instruct the jury upon all phases of the law of the case, but this position is untenable as the instructions were full, very favorable to defendant, and covered every feature of the case.

It is also claimed that the verdict was excessive and unjust, and the result of passion or prejudice, but there was not the slightest circumstance connected with the trial which was indicative of anything of the kind.   Defendant had a fair and impartial trial before an able and impartial court, and a jury of his own choosing, of whose verdict he has no right to complain because amply sustained by the evidence, evincing his deliberate and formed purpose to kill and murder the deceased.

Finding no reversible error in the record we affirm the judgment, and direct the sentence to be carried out. All concur.